# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK E. PATTERSON and KRIS LYNN-PATTERSON, individuals,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>AMERICAN ECONOMY INSURANCE COMPANY, a Corporation; and Does 1 through 25 inclusive,<br><br>　　　　　Defendants. | Case No: 1:14-cv-01281-EPG<br><br>ORDER GRANTING DEFENDANT AMERICAN ECONOMY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 25) |

### I.     Introduction

Plaintiffs Patrick Patterson and Kris Lynn Patterson ("Plaintiffs") filed this action against Defendant American Economy Insurance Company ("AEIC" or "Defendant") alleging breach of contract, and a breach of the covenant of good faith and fair dealing, related to theft of their property and coverage under a business insurance policy issued by Defendant. (ECF No. 1, pgs. 7-24). On March 21, 2016, Defendant moved for summary judgment on the two causes of action in the complaint. (ECF. No. 25). On April 15, 2016, Plaintiffs filed their Opposition (ECF No. 28). Defendant filed a Reply and related documents on April 22, 2016. (ECF Nos. 31-33).  The Court heard oral argument on April 27, 2016. (ECF. No. 35).  The parties subsequently submitted a joint statement of undisputed facts on May 2, 2016.  (Doc. 36).  Upon consideration of all of the above, Defendant's Motion for Summary Judgment is GRANTED.

This case involves the theft of Plaintiffs' business merchandise from their storage facility. One thief was convicted and sentenced for stealing Plaintiffs' property.  The removal of property may have involved multiple trips over multiple days, and potentially additional people.  The insurance policy at issue provides, in relevant part, that Defendant will pay for loss to business personal property up to $103,000 (subject to a $2,500 deductible) for "any one occurrence."  Defendant determined that the theft was a single occurrence under the policy, and paid Plaintiffs $103,000.00 pursuant to the policy's limits.  Plaintiffs filed this lawsuit on the basis that the theft constituted multiple occurrences, and as such, they are entitled to more coverage under the policy.

Construing the facts in the light most favorable to Plaintiffs, and even if the loss of property was accomplished through multiple trips over the course of multiple days, the loss of property was nevertheless part of one scheme involving at least one common individual, without interruption from the proprietor or changes in the building and property.  Thus, even under Plaintiffs' version of events, the scheme to steal property stems from one continuing cause and therefore, is one "occurrence" under the policy.  Therefore, Defendants' Motion for Summary Judgemnt is granted.

**II.     Background**

The following facts, among others, are undisputed:

Plaintiffs kept a storage facility at 5726 E. Shields Avenue, Fresno, California, with inventory from a former gift store, in order to operate a gift store business via the internet and in-store sales by appointment.  (ECF No. 36, at pg. 7).  The property was often unattended.  Plaintiff Patrick Patterson visited the Shields Avenue building on July 8, 2012, and did not observe anything that indicated it was not secure or had otherwise been burglarized.  (ECF No. 36, at pg. 8).  Plaintiff Patrick Patterson discovered he had been burglarized on July 19, 2012. (ECF No. 36, at pg. 11).

The immediate evidence of burglary included removal of an interior door from its door frame (ECF No 36, at pg. 12), the back door had been pried open in a manner that destroyed the dead bolt (ECF No. 36, at pg. 12), a 4500 pound safe had been removed (ECF No. 36, at pg. 12), the entire interior of the building had been ransacked, numerous items were missing including many heavy items from the back storage area (ECF No. 36, at pg. 12), the gate lock had been cut, fencing had

been cut, the gate latch had been bent (ECF No. 36, at pg. 12), and a substantial amount of copper wire had been removed from the building (ECF No. 36, at pg. 13). The Fresno Police Department issued a draft report of the "commercial burglary," which described the long list of property taken and events from July 15-18 related to the burglary. (Def. Compendium, Exh 2, ECF No. 25-7, pgs. 126-136).

Christopher Ramage was arrested and convicted of theft related to Plaintiffs' property. The Stipulation and Order Regarding Factual Findings and Restitution Owed provides in part:

1. Defendant, Christopher Ramage, entered property owned by victim, Patrick Patterson Jr. Located at 5726 E. Shields Ave. In Fresno, California with the intent to commit theft on multiple occasions between July 6, 2012 and July 19, 2012.

2. Defendant, Christopher Ramage, entered the 5726 E. Shields Ave. property on at least three different occasions and property stored at the location was removed during each of these illegal entries.

3. As a result of these various thefts, victim Patrick Patterson is owed restitution in the amount of $351,330.00.

(Def. Compendium, Exh. 13, ECF No. 25-7, pgs. 245-246).

Defendant AEIC issued to Plaintiffs, Patrick and Kris-Lynn Patterson an "Ultra Select Policy," policy number 02-BP-081271-9 ("the Policy") effective July 16, 2011 to July 16, 2012. (ECF No. 36, pg. 3; Def. Compendium Ex. 1, ECF 25-7, pgs. 14-123). The Policy provides in pertinent part, "The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance of Selection 1 . . ." (ECF No 36, at pg.4; Def. Compendium, pg. 21, ECF No. 25-7, pg. 38, ¶ C). Defendant AEIC paid Patterson the policy limit for one occurrence of $103,000 for the claimed loss of business personal property. (ECF No. 36, at pg. 5)

**III.   Legal Standards**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). A material fact is one that may affect the outcome of the case under the applicable law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).  A dispute is genuine "if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party." Id.

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In determining a motion for summary judgment, the Court must view the evidence "as a whole" and "in the light most favorable to the party opposing the motion," and "must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Oliver v. Keller, 289 F.3d 623, 626 (9th Cir. 2002).  An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248 (1986).

California's substantive insurance law governs in this diversity case. Encompass Ins. Co. v. Coast Nat. Ins. Co., 764 F.3d 981, 984 (9th Cir. 2014).  The California Supreme Court has explained the relevant law in determining whether a claim creates the potential for coverage is as follows:

> In determining whether a claim creates the potential for coverage under an insurance policy, we are guided by the principle that interpretation of an insurance policy is a question of law.  Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation.  In determining this intent, the rules governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it.  We consider the clear and explicit meaning of these provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage.  We must also interpret the language in context, with regard to its intended function in the policy.

Hartford Cas. Ins. Co. v. Swift Distribution, Inc., 59 Cal.4th 277, 288 (2014) (internal citations and quotations omitted).

### IV.   Analysis of the Breach of Contract Claim

The central issue in dispute is whether the provision in the Policy that "The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance of Selection 1 . . ." (ECF No 36, at pg.4; Def. Compendium, pg. 21, ECF No. 25-7, pg. 38, ¶ C), limits Plaintiffs' recovery under the Policy to the Limit of Insurance for all of the Business Property Losses from the Shields building.  In other words, are the losses suffered by Plaintiffs' business property one occurrence under the Policy, or could they be multiple occurrences?

Plaintiffs contend:

> Based on all the evidence relating to the loss, including the admission made by Chrisopher Ramage during his sentencing hearing, and the fact that the personal property items would have required at least two16 floor moving vans to be hauled away from the building, it is clear that the loss had to involve multiple thefts, taking place on different occasions, using different tools, and would have involved multiple people.

(ECF No. 36, at p. 18).  Defendant contends:

> [T]he single cause of Plaintiffs' loss was Ramage's scheme to break into Plaintiffs' building to steal property.  This constitutes but one proximate and continuing cause of the thefts of Plaintiffs' property, which results in a single occurrence under the Policy.  It makes no difference whether Ramage entered the building 3 times or 653 times over the course of 13 days, as the loss of property resulted from a single cause.  Further, it makes no difference whether Ramage worked alone or was part of a larger group of people as long as they worked together as part of a single scheme to carry out the theft. . . . Accordingly, as a matter of law, all of the thefts give rise to no more than a single occurrence under the Policy.

(ECF No. 25, at p. 15).

There is no definition of "occurrence" in the relevant section of the Policy.  Elsewhere in the Policy, other uses of "occurrence" are defined in relation to other types of coverage.  For example, in the section regarding loss for "money and securities," the Policy specifies that "All loss: (1) caused

5

by one or more persons; or (2) involving a single act or series of related acts; is considered one occurrence." (Compendium, pg. 28. ECF 25-7, pg. 45, ¶ d). The Liability section of the policy also defines occurrence: "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Def. Compendium, pg. 48, ECF 25-7, pg. 65, ¶ 13).[1]

### A. Review of the Relevant Case Law

The question of when a loss constitutes one "occurrence" under an insurance policy has been presented many times to California courts. Most notably, the Second District California Court of Appeal discussed the issue in EEOT Energy Corp. v. Storebrand International Ins. Co., 45 Cal.App.4th 565 (Cal. App. 1996) in considering whether a $1.5 million loss as a result of over 650 thefts of the petroleum products constituted one or multiple occurrences under an insurance policy. The Second District held that the trial court erred in granting summary judgment for the insurer based on the trial court's finding of multiple occurrences because there was evidence of a systematic and organized scheme to steal the fuel. The court held that the term "occurrence" as used in the deductible clause could encompass multiple claims all due to the same cause or related causes.

Specifically, the Court looked first to the dictionary definitions of occurrence: "Webster's dictionary defines 'occurrence' as 'something that takes place; [especially] something that happens unexpectedly and without design.' (Webster's New Internat. Dict. (3d ed. 1981) p. 1561.) Similarly, Black's Law Dictionary defines 'occurrence' as '[a]ny incident or event, especially one that happens without being designed or expected.' (Black's Law Dict. (5th ed. 1979) p. 974)." Id. at pg. 574. The Court also looked to the objectively reasonable expectations of the parties and concluded that "EOTT's objectively reasonable expectation would embrace the conclusion that multiple claims, all

---

[1] During oral argument, both parties argued that these definitions supported their position. Plaintiff argued that the fact that the Policy defined "occurrence" in these circumstances--but not in the provision in this case--signifies that those definitions did not apply to the provision at issue because Defendant, in creating the Policy, knew how to specify the definition if it chose to. In contrast, Defendant claimed that these definitions should be imputed to the use of occurrence throughout the policy if no definition was otherwise available.
   The Court is not persuaded by either argument and has made its determination without reference to these definitions. In the end, these definitions do not apply to the relevant part of the Policy at issue here, and it is speculation what was meant by including other definitions elsewhere.

1  due to the same cause or a related cause, would be considered a single loss to which a single
2  deductible would apply." Id. at 575.

3  The Court then looked to a number of cases considering the issue and ultimately adopted the
4  following rule: "when a scheme to steal property is the proximate and continuing cause of a series or
5  combinations of thefts, the losses for liability insurance purposes constitute part of a single
6  occurrence." Id. at 576, quoting and citing PECO Energy Co. v. Boden, 64 F.3d 852, 856 (3d Cir.
7  1995). Based on this rule, the Court concluded that "Provided that EOTT [Plaintiff] can establish
8  that there was a systematic and organized scheme to steal its diesel fuel products and that such
9  scheme was the proximate cause of its $1.5 million loss, then there would only be a single
10  occurrence subject to a single deductible of $100,000." Id. at 578.

11  A similar standard was applied by the District Court in the Central District of California in
12  the case of Budway Enterprises, Inc. v. Federal Ins. Co., 2009 WL 1014899, No. EDCV 09-448-
13  VAP (OPx) (C.D. Cal. Apr. 14, 2009). The Court in Budway dismissed a breach of contract claim
14  against the insurer/defendant because insured/plaintiff failed to allege facts to show that there were
15  at least two separate causes of theft to support a breach of contract claim. The relevant section
16  examined by the Court indemnified the carrier up to $100,000 per occurrence for loss or damage to
17  freight being transported by the carrier. Two tractors and trailers filled with aluminum shipments
18  were stolen from the freight yard, and the carrier submitted a loss and damages claim totaling
19  $150,679.43. It was unknown whether the thefts occurred at the same or different times.

20  The Budway court looked to numerous California cases concerning the application of the
21  term "occurrence" in insurance policies and adopted the so-called "cause standard" in evaluating
22  plaintiff's claim. Budway Enterprises, Inc., 2009 WL 1014899 at * 3 citing Whittaker Corp. v.
23  Allianz Underwriters, Inc., 11 Cal.App.4th 1236 (1992) ("[O]ccurrence has generally been held to
24  mean the underlying cause of the injury, rather than the injury or claim itself"); Eott Energy Corp. v.
25  Storebrand Int'l Ins. ("Eott"), 45 Cal.App.4th 565, 575-77 (1996) (applying cause standard, found
26  653 thefts committed as part of organized and systematic scheme to steal diesel fuel constituted one
27  occurrence); B.H.D., Inc. v. Nippon Ins. Co. of Europe, LTD ("B.H.D."), 46 Cal.App.4th 1137,
28

7

1141-43 (1996) (applying cause standard, found theft of $117,280 in jewelry from store over period of three months by one person constituted multiple occurrences); Lexington Ins. Co. v. Travelers Indem. Co. of Illinois ("Lexington"), 2001 WL 1132677, at *3-4 (9th Cir. 2001) (unpublished) (applying cause standard, found four separate fires in four separate buildings at four separate locations constituted four occurrences). Relying on that authority, the Court dismissed Plaintiff's cause of action because "Plaintiff fails to allege facts that show there were at least two separate causes of the theft to support its claim that Defendants breached the insurance contract." Budway Enterprises, Inc., 2009 WL 1014899, at *4. See also Safeco Ins. Co. of America v. Fireman's Fund Ins. Co. (2007) 148 Cal.App.4th 620 (Cal. App. 2007) (focusing on the event causing the injury to hold that "there was one uninterrupted cause or event—the landslide—that resulted in all the damage. Some of the damage—loss of use—may have continued into subsequent policy periods. But the existence of only one cause or event means there was only one occurrence for determining policy limits").

As noted in Budway, the Second District Court of Appeal examined the issue in another context in B.H.D. Inc. v. Nippon Insurance Company of Europe, LTD., in holding that each time an individual stole jewelry over a three-month period, the theft constituted a separate "occurrence" and required a separate deductible. B.H.D., 46 Cal.Appl. at  46 Cal.Appl.4th at 1140-43. In that case, a thief had visited a jewelry store two to three times a week over the course of three months. Id. Each time, she stole items of jewelry by dropping merchandise into her purse when the salesperson was distracted. Id.

The Court of Appeal affirmed summary judgment for the insurer, by holding that each time the thief stole jewelry, it counted as a separate occurrence under the deductible clause. The Court explained:

> While the thefts were similar, each was a completed crime that would have supported a separate count in a criminal proceeding and separate punishment.  This is not a case in which the thief had a general overall plan to steal a particular item or amount, or where he or she took advantage of a position of trust to embezzle an aggregate amount over an extended period.  "Martinez" clearly intended to steal jewelry from appellant, but each time she entered its store, purloined items displayed to her while

the salespersons' attention was distracted, and left the premises with the stolen merchandise, she completed a separate crime.

Id. at 1142.  It also specifically distinguished EEOT on two grounds: in EEOT, there was evidence of a systematic of organized scheme, and the policy in EEOT had a provision suggesting aggregation of multiple claimse into one occurrence:

> There was no evidence in this case of a conspiracy or a systematic and organized scheme, as there was in *Eott*. Indeed, in oral argument counsel for appellant made the point that it is undisputed that only one person was involved in the commission of the thefts. The central distinction, however, is the difference in the policy language. Rather than a provision that suggests aggregation of all thefts into a single claim ("all claims ... arising out of any one occurrence ... shall be adjusted as one claim"), the policy in this case specifically applied the deductible to each loss "separately occurring." There was no comparable provision in *Eott*, or the cases it cites. As we have discussed, we would have to read that phrase out of the policy to reach the conclusion urged by appellant. That we are unable to do.

Id. at 1143.

### B. Application of the Law to This Dispute

The Court now turns to applying the analyses above to the Policy and context of loss in this case.

We start with the dictionary definitions cited above, defining "occurrence" as "something" that took place, or "incident" or "event."  In theory, those definitions could support either Plaintiffs' or Defendant's interpretation.  Under Plaintiffs' interpretation, an "event" is the physical taking of property from the building and thus multiple trips to recover property constitute multiple events.  Under Defendant's interpretation, the "event" is the stealing of the property in the building by Ramage (and potentially others), which took some time to accomplish.  While these definitions do not resolve the issue, the Court finds that Defendant's interpretation is more reasonable here when examined through the lens of dictionary definitions.  After all, an occurrence is not defined as each physical removal of property—it is an incident or event.  In this context, it is reasonable to see the removal of the items in one building, by the same person (with or without help), without interruption from the proprietor or change in the circumstances of the property, as constituting one event or incident.  Taking property in multiple trips, with multiple implements, and potentially multiple

9

people can still be considered one event or incident, especially when the same building holding similar items is involved.  Under the plain understanding, the thing that occurred, i.e., the "something," "incident," and "event," is reasonably understood to be the withdrawal of property from the building by Ramage and potentially others.  Still, as it is possible to understand each trip to the building as a separate event, the Court looks to other aids in contractual interpretation to resolve the issue.

The Court next looks to the reasonable expectation of the parties.  In the context of coverage, both positions appear reasonable, i.e. a limit on coverage for each trip to the building or all removal of items combined.  But the reasonable expectation of the parties provides greater insight when evaluated in the context of deductibles.  Notably the term "occurrence" is the same for both coverage and deductible. (Compendium, Exhibit 1, at p. 22, Doc. 25-7 at pg. 39, ¶ D(1)) ("We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations.  We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance of Section I—Property.")).  In other words, the Plaintiffs must pay a separate deductible for each "occurrence."  The Court finds that it would be more reasonable for an insured to expect to pay a single deductible for Plaintiffs' losses here than multiple deductibles.  To hold that the insured would need to pay additional deductibles based on the number of trips made by a thief (and potentially associates) to complete the process of emptying a building would not comport with a reasonable expectation of the parties.  Not to mention if each deductible was defined by the removal of each item, or different tools used by a criminal in furtherance of the crime.

The Court next looks to guidance from California courts, especially the EEOT court, which grappled with a similar question.  In interpreting a contract using an undefined word "occurrence" in the context of deductibles, the EEOT court adopted the rule that "when a scheme to steal property is the proximate and continuing cause of a series or combinations of thefts, the losses for liability insurance purposes constitute part of a single occurrence."  EEOT, 45 Cal.App.4th at 576.  Here, the parties dispute whether the thief, Christopher Ramage, had a scheme as a matter of his mental state.

10

What is undisputed is that Ramage was involved, perhaps solely, in all of the taking of property; that it took place over a short period of time; and that it was uninterrupted by the proprietor. If it was not one single act on one day, which is disputed, it was at most a series of related acts. Under EEOT's test, the Court finds that the undisputed facts support the conclusion that the loss should be considered a single occurrence under the EEOT test.

The Court is also mindful of the B.H.D. decision, which found that each jewelry theft was "separately occuring" for purposes of assessing the deductible. It is worth noting that the B.H.D. Court looked to whether the losses would be charged as one or separate crimes. Here, the parties have not submitted evidence sufficient to determine whether Christopher Rampage, the thief in this situation, was charged with one or multiple crimes, and the parties declined to elaborate on that point during oral argument. That said, this Court observes certain material differences between the facts of B.H.D. and the facts here. The thief in B.H.D. stole a few items each time she visited the store over three months. The thief in this case (with or without help) stole a large amount of property over a short period of time. In B.H.D., the thief interacted with the sales people and used the window of their distraction to purloin goods. The thief in this case stole goods without any personal interaction during one large window of time when the building was unoccupied. In B.H.D., the thief developed a method to steal whatever jewelry she could when a sales person looked away, and then repeated that method over and over when the circumstances were ripe again until she was caught. Whereas the thief(s) in this case made one large attempt to take as much property as possible over a short period of time before the plan could be detected. This difference in facts supports the conclusion that while the B.H.D. thief committed multiple occurrences of burglary, and the thief(s) in this case committed only one long occurrence.

Finally, the Court looks to the description in the Policy regarding claims to see if it was intended for occurrences to cover multiple claims or not. In EEOT, while the word "occurrence" was undefined, the Court rested its decision in part on the fact that the deductible clause in the policy provided that "all claims for loss, damage or expense arising out of any one occurrence . . . shall be adjusted as one claim . . . ." EEOT, 45 Cal.App.4th at 575. In B.H.D., in contrast, the Court relied

in part on the fact that the policy lacked the language of the EEOT policy and instead applied the deductible to each loss "separately occurring." B.H.D., 46 Cal.App.4th at 1143.  Here in this Policy, the limits of insurance phrase states, "The most we will pay for loss or damage in any one occurrence is the applicable Limit of insurance of Section I . . . ." and the deductible provision states "We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible . . . ." (Def. Compendium, Exhibit 1, pg. 21-22, ECF 25-7, pg. 38-39, ¶ C & D).  The language thus does not contain the language in the EEOT policy, nor the language in the B.H.D. policy.  It speaks of loss or damage, not the number or separateness of claims.  Those provisions thus do not guide the Court toward either interpretation.

In conclusion, based on the language of the Policy, the context of the loss, the dictionary definitions, the reasonable expectations of the parties, and the California courts' understanding of the word occurrence in similar situations, this Court finds that Plaintiffs' losses are not covered by the Policy because, under the undisputed facts, they constituted a single "occurrence."

### V.     Analysis of Breach of Implied Covenant Claim

Plaintiffs have also asserted a cause of action for breach of the implied covenant of good faith and fair dealing.  Under California law, if a loss is not covered and no benefits are due, there can be no tort liability for breach of the implied covenant, even if the investigation was negligent. Benavides v. State Farm General Ins. Co., 136 Cal.App.4th 1241, 1250–51 (Cal. App. 2006) ("Thus, to establish an implied covenant tortious breach, an insured must show first, that benefits were due under the policy, and second, that the benefits were withheld without proper cause.  It follows an insured cannot maintain a claim for tortious breach of the implied covenant of good faith and fair dealing absent a covered loss.  If the insurer's investigation—adequate or not—results in a *correct* conclusion of no coverage, no tort liability arises for breach of the implied covenant.") (internal citations omitted).  Thus, the Court grants summary judgment in favor of Defendant for this claim as well, based on its ruling regarding coverage discussed above.

///

///

## VI.     CONCLUSION AND ORDER

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF No. 25) is GRANTED.

In light of this order, the Court will hold a status conference on July 7, 2016 at 10:00 a.m.  Parties may appear telephonically.

IT IS SO ORDERED.

Dated:  __**June 9, 2016**__                          /s/ Erica P. Grosjean
                                                     UNITED STATES MAGISTRATE JUDGE